COMMERCIAL CASUALTY INSURANCE COMPANY, Respondent, *v.* HARTFORD ACCIDENT AND INDEMNITY COMPANY et al., Appellants, Impleaded with Another.

(Argued April 22, 1936; decided May 19, 1936.)

*Harland B. Tibbetts* and *Murray D. Welch* for appellants.

*Colley E. Williams, Henry Jaffe* and *William Lurie* for respondent.

FINCH, J.   This case involves a question of liability on a reinsurance contract.   The stipulated facts are as follows:

The plaintiff, the Commercial Casualty Insurance Company, issued a bankers' blanket bond to the Parisi Trust Company (subsequently changed to Central Bank and Trust Company) on November 3, 1928, by the terms of which the plaintiff undertook to indemnify the bank in an amount not exceeding $25,000 for losses which the bank might sustain as a result of dishonest or criminal acts of its employees.   Subsequently the amount of the bond was increased to $50,000.   This bond will be referred to hereafter as " Bond No. 1."   The bond was in effect from November 3, 1928, to November 3, 1930, indemnifying losses occurring during this period if the losses were discovered prior to the expiration of twelve months after the termination of the bond.   The bond thus indemnified

against losses sustained between these dates if the losses were discovered prior to November 3, 1931. This additional twelve months' period is technically known as the " cut-off period."

On November 3, 1930, a second bond was issued by the plaintiff to the bank. This bond will be referred to as " Bond No. 2." This bond ran for two years and covered the period from November 3, 1930, to November 3, 1932. It had a cut-off period expiring November 3, 1933. Bond No. 2 had attached to it a so-called " Superseded Surety-ship Rider." This rider, among other things, provided: " 1. That the attached bond [Bond No. 2] shall be construed to cover, subject to its terms, conditions and limitations, any loss or losses under the prior bond [Bond No. 1] which shall be discovered after the expiration of the time limited therein for the discovery of loss thereunder [November 3, 1931] and before the expiration of the time limited in the attached bond for discovery of loss thereunder, and which would have been recoverable under the prior bond had it continued in force." (Explanatory words in brackets inserted.)

To sum up the situation: Bond No. 1 covered losses sustained by the bank between November 3, 1928, and November 3, 1930, if the losses were discovered prior to November 3, 1931. Bond No. 2 covered (a) losses sustained between November 3, 1930, and November 3, 1932, if discovered prior to November 3, 1933; (b) losses sustained between November 3, 1928, and November 3, 1930 (that is while Bond No. 1 was in force), if discovered subsequent to November 3, 1931 (when the cut-off period of Bond No. 1 terminated), and prior to November 3, 1933.

The rider to Bond No. 2 acted to extend the period during which losses under Bond No. 1 could be recovered. The combination of both bonds and the rider furnished the bank with continuous protection for the four-year period from November 3, 1928, to November 3, 1932, if the losses were discovered prior to November 3, 1933.

The plaintiff on November 3, 1930, reinsured $25,000 of its risk under Bond No. 2. For the sake of convenience, the two companies which furnished this reinsurance will be termed " Group A." The Group A reinsurance continued in force until August 25, 1931, when it was canceled. The plaintiff then entered into a contract of reinsurance with the appellant companies which will be referred to as " Group B."

In April, 1932, it was discovered that an employee of the bank had been embezzling its funds, starting in February, 1929, and continuing until the time of his apprehension on April 12, 1932. This litigation involves only the sums taken between February 13, 1929, and November 3, 1930; that is, while Bond No. 1 was in effect.

The loss involved occurred during the currency of Bond No. 1. It was not discovered until April, 1932, which was after the expiration of the cut-off period of Bond No. 1. The loss thus came within the terms of the superseded suretyship rider attached to Bond No. 2.

The plaintiff indemnified the bank for the losses and then instituted this action against the Group B reinsurers and the Consolidated Indemnity Insurance Company, one of the companies in Group A. (The other company in Group A is affiliated with the plaintiff and, therefore, was not made a formal party, but agreed to abide by the result of this litigation.) The Consolidated Company was subsequently taken over by the State Superintendent of Insurance and the action against it was severed. The plaintiff has recovered a judgment against the Group B reinsurers which has been affirmed by the Appellate Division.

The Group B reinsurers assert that they did not assume liability for the losses involved and that in fact they expressly excluded liability for such losses. The fact that the plaintiff is liable to the bank under the terms of the rider attached to Bond No. 2 does not necessarily

predicate an equivalent liability on the part of the Group B reinsurers. Their liability is a contractual one and must be found under the provisions of their contract with the plaintiff.

The contract or policy entered into between the plaintiff and the Group B reinsurers is the standard form of reinsurance agreement adopted in 1930 by the Surety Association of America. Included in the terms of the agreement is section 12 which in part reads as follows: " If reinsurance hereunder supersedes, in whole or in part, any *cancelled* reinsurance, the Reinsurer [Group B] hereby assumes liability wholly or in *pro rata* part, as the case may be, for losses which occurred before the effective date of the cancellation [August 25, 1931, the effective date of cancellation of Group A reinsurance] of such superseded reinsurance, but notification of which was not received by the Reinsured [the respondent] before the expiration of the period specified in the first paragraph of this section [thirteen months after August 25, 1931, *i. e.*, September 25, 1932]." (Explanatory words in brackets inserted.)

Thus if the reinsurance of the Group B reinsurers superseded reinsurance of Group A, Group B is not liable for any loss which occurred before the cancellation on August 25, 1931, if notice of such losses was received by the plaintiff prior to September 25, 1932. The losses in the case at bar occurred prior to November 3, 1930, and notice of them was received in April, 1932. Section 12, therefore, exempts the Group B reinsurers from liability if the reinsurance superseded canceled reinsurance. The question then is whether the reinsurance by Group B on the rider attached to Bond No. 2 superseded canceled reinsurance of Group A.

Group A reinsured all liability under Bond No. 2 including liability under the superseded suretyship rider. The rider picked up liability under Bond No. 1 at the expiration of the cut-off period of that bond; that is, on Novem-

ber 3, 1931. The plaintiff argues that since the Group A reinsurers canceled their reinsurance on August 25, 1931, and the cut-off period under Bond No. 1 did not expire until November 3, 1931, liability for losses during the term of Bond No. 1 did not attach to Bond No. 2 until after the cancellation by Group A and that, therefore, they never reinsured under the rider. If this reasoning were accepted it would follow that the reinsurance of the rider by Group B was new reinsurance and did not supersede canceled reinsurance. But can it be said that Group A did not reinsure liability under the rider?

On November 3, 1930, Group A reinsured a rider to the bond which provided insurance for losses occurring between November 3, 1928, and November 3, 1930, if the losses were discovered subsequent to November 3, 1931. The mere fact that liability could not be imposed on Group A unless the losses were discovered after November 3, 1931, does not mean that no insurance existed prior to that time. The appellants refer to this liability of the Group A reinsurers as " latent liability." Term it what you will it cannot be gainsaid that prior to November 3, 1931, the plaintiff under Bond No. 2 was subject to a potential liability for losses which had occurred during the life of Bond No. 1 and this potential liability was reinsured by Group A. Actual liability could not arise until after November 3, 1931, but insurance against such liability could be given at any time.

To illustrate by a hypothetical analogy. X may take out a life insurance policy in 1936 which provides that if death occurs during the first year no liability on the part of the insurance company shall accrue. It would not be proper to say that X will not be insured until 1937 when the one-year period elapses. Liability may not arise until a fixed period expires but the liability which may arise after the fixed period is insured from the time the policy is issued.

We conclude that liability under the rider attached to Bond No. 2 was reinsured by the Group A reinsurers

and that, therefore, the Group B reinsurance superseded this canceled reinsurance of Group A and under the terms of section 12 of their policy Group B is not liable for the losses which occurred prior to November 3, 1930, and were discovered on April 12, 1932.

The foregoing would lead to a reversal but it appears that the Group B reinsurers admit liability for small amounts.

The judgments appealed from should be modified by reducing the amount awarded against the appellant, The Hartford Accident and Indemnity Company, to $579.01, and against the Ætna Casualty and Surety Company to $386, and as so modified affirmed, with costs to appellants.

CRANE, Ch. J. (concurring). I agree with the opinion of Judge FINCH. The question first to be determined is, what did Bond No. 2 with its rider cover? This rider provides: " 1. That the attached bond [Bond No. 2] shall be construed to cover, subject to its terms, conditions and limitations, any loss or losses under the prior bond [Bond No. 1] which shall be discovered after the expiration of the time limited therein for the discovery of loss thereunder [November 3, 1931] and before the expiration of the time limited in the attached bond for discovery of loss thereunder, and which would have been recoverable under the prior bond had it continued in force."

Bond No. 2 covered losses occurring subsequent to its issuance and also by the rider covered losses occurring during the time of Bond No. 1 which could not be recovered under the provisions of Bond No. 1. In other words, Bond No. 2 covered losses sustained between November 3, 1930, and November 3, 1932 (the period when Bond No. 2 was in force) if discovered prior to November 3, 1933 (when the cut-off period of Bond No. 2 ended). Bond No. 2 also covered losses sustained between November 3, 1928, and November 3, 1930 (period of Bond No. 1), if discovered subsequent to November 3, 1931 (cut-off period of Bond

No. 1), but prior to November 3, 1933, the termination of the cut-off period of Bond No. 2.

From this we readily see that the insured was covered for losses occasioned during the periods stated and discovered any time prior to November 3, 1933. The Commercial Casualty Insurance Company issued the policies and sought from the defendants reinsurance. Group A of the reinsurers took the risk of losses under Bond No. 2, which included those covered by the rider or, in other words, losses under Bond No. 1 as extended by the rider. As we saw, this rider extended the period of discovery up to November 3, 1933.

Group A reinsurers canceled their reinsurance August 25, 1931, but this did not cancel their liabilities. They were still liable for losses which had occurred on Bond No. 1 and were discovered prior to September 25, 1932. Why do we fix this date of September 25, 1932? Because of the standard form of reinsurance agreement binding upon these parties. It reads, so far as applicable here:

" 12. If the reinsurance hereunder shall be cancelled as provided herein before the termination of the Bond, the Reinsurer shall not be liable on account of any losses which occurred before the effective date of such cancellation, but which were unknown to the Reinsured at that date, unless notification thereof shall be received by the Reinsured within a period beginning on the effective date of such cancellation and continuing for a term equal to that of the cut-off period [one year], plus the notification period, defined in the bond  *  *  *." (Thirty days, making the time of notification of loss after cancellation run in this case from August 25, 1931, to September 25, 1932.)

The reinsurance agreement further provides: " If reinsurance hereunder supersedes, in whole or in part, any cancelled reinsurance, the Reinsurer hereby assumes liability wholly or in *pro rata* part, as the case may be, for losses which occurred before the effective date of the cancellation of such superseded reinsurance, but notifica-

tion of which was not received by the Reinsured before the expiration of the period specified in the first paragraph of this section."

The loss under Bond No. 1 was discovered in April, 1932. This brought it within the reinsurance liability of Group A which did not expire, as I have stated, until September 25, 1932. Group B of the reinsurers come under the last clause above quoted. This specifically provides that they assume liability only for those losses which occur *before* the effective date of cancellation but notification of which was not received by the reinsured *before* the expiration of the period specified in the first paragraph of this section (September 25, 1932). In other words, Group B are liable for losses occurring prior to cancellation provided the notification of the loss is not made until *after* September 25, 1932.

I do not see in view of these provisions how the defendants in this case are liable for the loss occurring under Bond No. 1 before cancellation, notification of which was given in April of 1932 *before* and not *after* September 25, 1932.

For these reasons I believe the judgment should be reversed, or at least modified, as stated by Judge FINCH.

LEHMAN, O'BRIEN, HUBBS, CROUCH and LOUGHRAN, JJ., concur with FINCH, J.; CRANE, Ch. J., concurs in separate opinion in which all concur.

Judgment accordingly.